Scott, C.J.
The determination of the question made by the demurrer to the first defense set up in the answer, involves a construction, to some extent, of that part of the contract which relates to the compensation of the plaintiff.
At the time of entering into the contract, the factory buildings were in process of erection. The plaintiff below was charged by the contract with a double duty, that of superintending the erection of the buildings and placing therein the .necessary machinery and apparatus, and also the superintending of the business of manufacturing starch, after the necessary buildings should be erected, and the machinery got in operation.
As evidence of his faith in the success of the enterprise, he agreed, that his compensation should, after a certain time, consist only of a part of the net profits after deducting interest on cost of buildings, and machinery, etc. But, until this time should arrive, he was to be paid $150 00 per month.
The terms of the contract leave no room for doubt, that the parties expected to commenoe the manufacture of starch, before the whole of the buildings, then contemplated, should be erected and furnished with their appropriate machinery. So soon as necessary buildings and the machinery required in the various departments and processes of the manufacture, should be erected and fitted for use, they expected to commence manufacturing, and to extend the business as the farther buildings, then contemplated, should be fitted for use, and appropriately furnished, until the plan, then designed, should be fully carried out.
The plaintiff below would, therefore, for a time, be limited in his duties solely to superintending the erection of build *352 ings, and setting up machinery; and when manufacturing would commence, his superintendency would extend to both building and manufacture; and when the buildings and machinery then contemplated should be completed, his time and talents were to be devoted exclusively to manufacturing.
Though the plaintiff thus undertook a twofold duty, yet the contract was entire. He was to be paid, for a time, by the month; after that, by a share in the net profits for the term of three years. The contract provides that this change in the terms and measure of his compensation should take place, and the three years, during which the contract was to remain in force, should commence, at “ the average time of getting into full operation in successful manufacture of starch from indian corn, as aforesaid; which said average time shall hereafter he agreed upon and fixed hy the parties.”
Some of the provisions of the contract clearly show that the parties expected the factory, when completed, to have a capacity" at least equal to the daily consumption of six hundred bushels of corn, if not more. And we might suppose, that by “ the time of getting into full operation,” the parties intended to designate the time when the factory should be so far completed as to have attained this capacity. But what was intended by “-the average time of getting into full operation in the successful manufacture of starch,” is not so apparent. An “ average time of getting into full operrtion,” would seem to imply a comparison of a time when the operation of the factory would be partial, and fall short of the expected standard, with the time when the full completion of the works would give it a capacity exceeding this standard. But, however this may be, it is sufficient, for the purposes of the case, to know that the parties regarded this “ average time ” as ascertainable only by' investigation and calculation, when the results of the operations of the factory, during its progress toward completion, would be before them ; and they provided, therefore, by the contract, for 'the future fixing of this average time, by the agreement of the parties.
So long as the defendant below made no claim to the plaintiff that the average time of getting into full operation had *353 arrived, and asked for no examination or ascertainment of tbe facts which would enable the parties to determine, by agreement, the time 'when the plaintiff’s fixed compensation by the month should end; and the mode of graduating his compensation by the amount of net profits commence; the plaintiff might well assume, that the defendant was assenting to the continuance of the monthly stipend of $150 00. So long as both parties failed to claim a right to change the mode of estimating the plaintiff’s compensation, they must be regarded as mutually waiving such right,'if it existed; for the time of making the change was to be ascertained and fixed by their mutual agreement.
This first defense, then, resting, as it does, on an alleged change in the mode and measure of plaintiff’s compensation, is defective, in neither averring that the time'of such change rvas agreed upon by the parties, as provided by the contract, nor assigning any excuse for the want of such agreement. And the demurrer to this defense was properly sustained- by the court.
The second defense rests upon the alleged fact that the plaintiff had failed so to plan, arrange, order, design and contrive said factory, as that when completed, in conformity with the plan, it would be competent to manufacture six hundred bushels of corn into starch, per day, and that for this breach of his- duty, and for other causes, the defendant had discharged him from employment, as building superintendent, having first fully paid him for his services rendered. Was the failure here charged to the plaintiff a sufficient cause for his discharge ? This must depend upon the terms of the contract. The erection of the factory buildings, appears to have been progressing, at the time the contract was executed. Its plan must have been previously originated and devised, but by whom, does not appear. Both parties seem to have been satisfied with it, when the contract was entered into, and as we have already said, from its terms, there is no reason to doubt, that all the parties interested expected that the factory, when completed according to the contemplated plan, would have a capacity equal to the daily consumption of six *354 hundred bushels of corn, if not more. The undertaking was expected to prove profitable, and the amount of the net profits, it was, no doubt, supposed, would depend, mainly, on the extent of the business. Each of the parties was equally interested in the realization of their expectations, for the net profits were to be equally divided between the plaintiff and defendant. But, while the defendant covenanted to act as building superintendent, and stipulated, for his own security, that he should have the full control of -all the operations in the erection of the buildings, and the putting up of the machinery, and the supervision and adoption of all plans, and the management of the hands until the whole should be completed and ready for the manufacture of starch ; and though he further covenanted, for the security of the defendant, that he was possessed of a full knowledge of the art and mystery, chemical as well as manual, pertaining to the manufacture of starch, and that he would bring the necessary knowledge and skill to the process of manufacturing, while in the service of the defendant, and would devote his whole time, talents and skill to the interests of the company, in the contemplated business; yet, we find, in the contract no covenant or undertaking, on the part of. the plaintiff, that the buildings and machinery would have, when completed, a capacity equal to the consumption of any specified quantity of corn. There is, upon his part, no warranty of definite results, further than that his knowledge, skill and attention should be adequate to the full, perfect and successful manufacture of starch. By the contract it was made the interest of the plaintiff, that the enterprise should prove successful. And upon this security for good faith, the company -would seem to have relied, and asked for no further guaranties. We think, therefore, that the partial failure of the factory, when completed, to realize fully the expectations of the parties, as to the extent of its capacity, though unfortunate, perhaps, for both parties, was not a breach of the plaintiff’s covenants, and that the demurrer to this defense was properly sustained by the court.
We pass, then, to the third defense, which seems to have been regarded in the court below merely as a counterclaim. *355 It traverses the averment of the petition that Colgate discharged his duties as superintendent according to the contract, to the acceptance of the company, till April 12,1858; and avers that, on the contrary, being engaged in the manufacture of starch from December, 1857, till the 12th of April, 1858, he so far failed to superintend and carry on the business with proper care and skill, that from the quantity of corn consumed during that time, he produced 92,000 lbs. of starch less than should have been, and, with proper care and skill, would have been produced from the said corn — that this deficiency in starch, caused by his want of care and skill, amounted in value to $3276 tVV; that he had thereby broken his covenants, and was for this cause discharged from said employment, by the defendant.
These averments, if true, show that the failure of Colgate to carry on the business contemplated by the contract, with the care and skill which he had covenanted to bring to the management of the factory, was causing to the company a monthly loss of about $1000. A breach of his covenants, forming such an essential part of the contract, would clearly justify the company in discharging him from their service. Such neglect of duty, upon his part, as would defeat the whole object of the enterprise, by rendering it unprofitable, must give the company a right to put an end to the contract. And the company, having exercised this right, by discharging him from their service, it is clear that his subsequent readiness and willingness to continue in their service, can lay no foundation for a claim to compensation under the contract. The facts stated in the third defense, seem to us, therefore, to constitute a sufficient bar to the plaintiff’s action. They appear to be stated in the answer as a ground of defense, and are regularly numbered as such, according to the requirements of the code. It is true, that they are followed by a counterclaim for the amount of damages sustained by the defendant below, by reason of the same breaches of covenant for which the plaintiff was lawfully discharged. Wo see no good reason why the same breaches of covenant on the part of the plaintiff below, might not justify his discharge, and *356 thus constitute a defense to the action; and, at the same time, he a ground of counterclaim for damages. And^ it would, perhaps, be unnecessary to restate the facts in making the counterclaim. But if this-mode of attaching a counterclaim to a defense, where both are predicated on the same facts, be formally defective, the objection to the pleading could only be properly taken by motion. But no objection was made to this defense or to the mode of stating it, either by motion or demurrer. The plaintiff replied to it, as “the third defense or counterclaim.” The reply was twofold; the second count of it consisting of a denial of the alleged breaches of his covenants. This reply to the third defense raised an issue of fact, upon which the record shows no finding of the court. Instead of such finding, it was considered by the court “ that said counterclaim and third defense of the defendant be quashed and abated.”
In thus failing to pass upon the issue raised by the third defense and the reply thereto, and in quashing the same, we think the court of common pleas erred.
To the counterclaim connected with the third defense, the plaintiff answered that in a former suit brought by him before a justice of the peace against the defendant, on a cause of action other than the one stated in his petition, but arising from the same contract, the defendant filed a bill of particulars of a counterclaim for damages on the same agreements stated in the present counterclaim. That said action was tried by a jury, and a final judgment rendered thereon by the justice, from which an appeal was taken by the plaintiff to the common pleas, and the bills of particulars of the parties were certified to said court by the justice, and that the cause is still pending. To this answer the defendant replied, in substance, that the whole amount .of damages stated in the bill of particulars filed before the justice, exceeded his jurisdiction by $2976 88; that a counterclaim had been set up before the justice, only for $300, part of said damages, reserving the right to recover the residue, being said excess, as might be lawful; and that said counterclaim has not, since the appeal, been pleaded or asserted in the action. The reply *357 was demurred to by the plaintiff, and the demurrer was sustained by the court.
It is claimed by the defendant, that under the provisions of section 108 of the justices act (1 S. & C. Stat. 788), a counterclaim could be made before the justice for such portion of the damages claimed as would not exceed the jurisdiction of the justice, resevering the right to a subsequent recovery of the residue. That section reads thus :
“ When the amount due to either party exceeds the sum for which the justice is authorized to enter judgment, such party may remit the excess; and judgment may be entered for the residue. A defendant need not remit such excess, and may withhold setting the same off, and a recovery for the amount set off and allowed, or any part thereof, shall not be a bar to his subsequent action for the amount withheld.”
But we think it clear, that this section, in speaking of “the amount due to either party,” and in permitting a defendant to set ©ff a part of such amount, when the whole exceeds the jurisdiction of the justice, without remitting the excess, refers only to such liquidated demands as are the proper subject of setoff, and not to unliquidated damages, which only become the subject of counterclaim, when “ arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff’s claim, or connected with the subject of the action.” A claim for unliquidated damages on account of a single transaction, is in its nature entire, the ascertainment of the amount due thereon, involves an inquiry into the whole transaction, and the judgment of a court on the subject, rendered in the exercise of proper jurisdiction, njust, while in force, conclude the parties. The subdivision of such a counterclaim would involve repeated trials of the same issue, between the same parties, resulting in judgments inconsistent with each other, but all binding upon the parties — and yet leaving the subject of controversy still open. We can not suppose that a construction of the statute leading to such anomalous and absurd results, is the proper one. What, then, was the effect of the defendant’s attempt to set up a *358 counterclaim, before the justice, for a part of the unliquidated damages claimed, and expressly withholding the residue? The whole claim far exceeded the justice’s jurisdiction, ■and the defendant declined to give him jurisdiction by remitting the excess. It could not be subdivided, as the defendant proposed, and the consequence was that the justice could take no jurisdiction of the counterclaim as it was stated in the defendant’s bill of particulars. We think the reply of the defendant shows that no part of the counterclaim here set up, was so pleaded before the justice as to bring it within his jurisdiction; and not having been pleaded at all in the court of common pleas, it can not be said to be there pending, as alleged by the plaintiff. We see no reason why an abortive ■attempt to invoke a jurisdiction, not possessed by the justice, ■should forever preclude the party from all right to redress in another action. We think, therefore, that the court erred in sustaining the demurrer to the defendant’s reply on the subject of the counterclaim, and that the same should have been, ■overruled.
Eor the errors we have indicated, the judgment of the district court and that of the court of common pleas will be reversed, and the cause remanded to the court of common pleas.
Suture, Peck, Gholson and Brinkerhoee, J J., concurred.